SARAH E. LEE ET ALS. v. G. D. B. PARKER.

(Filed 15 March, 1916.)

**1. Tenants in Common—Deeds and Conveyances—Possession—Ouster—Limitations of Actions.**

In order for one tenant in common to acquire the title to lands against the other tenants there must be some act of ouster amounting to disseizin; and where he has acquired an invalid deed from the other tenant, and they both live on the land as theretofore, the deed so acquired is not color of title.

**2. Deeds and Conveyances—Signing and Delivery—Cross Mark—Request and Consent—Intent.**

The due execution of a deed requires the signing, sealing, and delivery by the grantor with the intent of the grantor that it should operate as his conveyance and pass title to the grantee; and where the grantor's cross mark or other appropriate symbol to the signature of his name is written by another, it must appear to have been done at his request, or with his consent, expressed or implied.

**3. Deeds and Conveyances — Signing and Delivery — Cross Mark — Trials — Questions for Jury—Courts—Matters of Law.**

Whether the grantor in a deed adopted the signature thereto made for him by another is a question for the jury, but the legal sufficiency of the evidence, as well as the valid delivery of the deed thereon, is a question for the court.

**4. Deeds and Conveyances — Execution — Signing and Delivery — Intent — Evidence—Trials—Questions for Jury.**

Upon a trial of title to lands depending upon the valid execution of a deed made by a daughter to her father, there was evidence tending to show she was at the home of her father at the time, confined to her bed; that her father entered her room with the probate officer, the latter having the deed, and said: "Here is the deed for you to sign;" that the father lifted her hand to the pen, which another person held, and made her cross mark, though she could read and write; that before her father entered with it she had expressed herself averse to executing the deed, but saying she was afraid not to do so; that she said nothing at the time or thereafter about making her cross mark. *Held*, it was for the jury to consider the evidence with its surrounding circumstances, and decide whether the grantor had exercised her will and executed the paper with the intent that it should operate as her deed.

**5. Deeds and Conveyances—Signing and Delivery—Instructions.**

Where upon the trial of an action involving the question of whether a deed in defendant's chain of title had been properly executed, a charge by the court to the jury that if certain facts existed the signature would have been a forgery is not prejudicial to the defendant, if erroneous, the jury having been further and properly instructed how to answer the issue in the event they made such finding, for the charge should be construed as a whole.

**6. Deeds and Conveyances—Improper Execution—Fraud—Evidence—Duress —Trials—Questions for Jury.**

Where the jury have found from the evidence that a deed in the chain of title to the *locus in quo* under which a party claims is defective for improper execution, the deed can pass no title to the lands, and they need not then consider whether it was procured by fraud or duress, or pass upon the rights of innocent purchasers for value and without notice.

ALLEN, J., did not sit.

APPEAL by defendant from *Connor, J.,* at August Term, 1915, of DUPLIN.

Civil action brought to recover the interest of the plaintiffs in a tract of land which they alleged is owned by them and defendants as tenants in common. It was admitted that if plaintiffs own any interest in the land it is three-eighths, the defendant owning the remaining five-eighths.

The decision of the case turns upon the validity of a deed purporting to have been made on 7 September, 1905, by Mary E. Wade to Clark M. Wade and wife, Kizziah Wade, and Harriet M. Wade and Bertie A. Wade for the "Sand Hill tract of land," upon a consideration of $50. Mary E. Wade, called Bettie, was a daughter of Clark M. Wade by his first wife, Sarah E. Wade. His second wife was Kizziah Wade, by whom he had two children, Bertha Wade and Harriet Wade. On the day the deed from Mary E. Wade is alleged to have been executed she was living on the land with her father, and at the time was tenant in common of the land with her father and her brother in the proportion of three-eighths and five-eighths thereof. She had been in feeble health for some time before the date of the deed, and on that day was bedridden. One of plaintiff's witnesses (Mrs. Sarah Garvey), who was present when the deed is alleged to have been signed and delivered, testified: "In 1895 I lived near Sand Hill in Duplin County, about 200 or 300 yards from Clark M. Wade's. I knew him and his daughter, Mary E. Wade. She died during the month of July, in her father's home, on the land in controversy. Her physical condition for several weeks before her death was bad. She could not lie down at all, on account of shortness of breath. She could move her body a bit, but could not get up and walk about, she was swollen so. She was in this condition a month or two before her death. A short time before her death—a week or two—I was at Mr. Wade's home. Mary's condition was bad that day. She could move her hands and arms, but could not get up or walk. Mr. Burton was there that day. Mr. Wade and Mr. Burton came into the room where Mary was. Mr. Wade said: 'Bettie, I am ready for you to sign this deed,' and he reached and took her hand and put it to the deed, and he said, 'Joe, make her mark,' and he made the mark. Mr. Burton had the deed when they came into the room. He held the pen to the deed. Mary Wade

LEE *v.* PARKER.

never said anything when her father took her hand from her lap and held it to the pen while Mr. Burton was making the mark. I was sitting near enough to her to take hold of her. Immediately prior to the time when her father and Mr. Burton came into the house with the paper she told me that he was trying to make her sign away her right in the land. She said he wanted it for his two children, Bertha and Harriet. She said: 'I don't want to do it; but if I don't he will drive me away. He won't let me stay here.' And about that time they came in, and she never said any more. I saw Mary Wade nearly every day from this time until her death. She never could get up or move about. She had two children at this time, Sarah and Hattie, the plaintiffs. Mr. Wade's children and mine were there when this took place. I am no kin to plaintiffs. I was there that day to see Mary Wade because she needed waiting on. Her condition was as good, to all appearances, as it was any time that summer. I do not know what the paper was or what was in it. I knew Mr. Burton. I always took him to be a perfect gentleman. Mary Wade and Mr. Wade's family were all staying there in the same house. Mr. Burton was a magistrate. He is dead. Mary Wade lived a little while after that—maybe a month. She went there in May of that year. She was about 35 years old. Mary Wade could write her name. She had a right good education. She tried to get a school to teach one time, but never got it. My boy, Levy, is 31 years old. When her father put her hand to the pen Mary just dropped her head, with her arms folded in her lap. She did not put her fingers to the pen. Her father just took her hand and put it there. Mr. Burton did not ask her any questions. I was sitting near enough to her to touch her."

Levy Garvey testified: "I am 31 years old. Mrs. Sarah Garvey is my mother. I remember being with her at Clark Wade's that day when Mr. Burton was there. Mr. Wade and Mr. Burton went in there where Miss Mary Wade was sitting on the edge of the bed. Mr.. Burton had the paper. Mr. Wade told her he wanted her to sign it. She never made any move at all. He took hold of her hand and laid it on the pen and said, 'Here, Joe, make her mark.' I don't know what became of the paper. I was 10 or 12 years old at this time. Don't remember what month it was, but it was warm weather. I just went there that day with my mother. I was playing with the children. I don't know whether Mr. Wade or Mr. Burton held the pen; I remember seeing the pen, but do not know which one had it. I do not know what the paper was. It was white."

Amos Hall testified: "I am 33 years old. Clark Wade's second wife· was my mother. He was not my father. I remember the day Mr. Joe Burton came to Clark Wade's house with a paper. They called it a deed. He told her that she must sign the paper when Mr. Burton came,

and if she didn't sign it he would put her out of the house. When Mr. Burton came I was out in the yard."

A. J. Sumner testified: "I am 72 years old. I know Mary Wade; she was called 'Bettie.' I raised one of her children, Sarah. I took her when she was 2 or 3 years old; she is older than Hattie. Hattie lived with Mr. Wade until she was married. Neither I nor my wife are related to them. I know the Sand Hill tract. A fair rental value of the land in 1905 was $20 to $30."

D. B. Rhodes testified: "I cultivated the Sand Hill tract in 1902 and 1903. I knew Mary Wade. Her condition in 1895 was very bad. She was swollen mighty bad in her body and her legs. She could not get about, but her hands were not swollen. She had a fair education; could read, and wrote a nice hand."

Defendants objected to some of this testimony. The deed from Mary E. Wade to Clark Wade and others was probated 7 September, 1905, on the oath of David Burton as to the handwriting of J. L. Burton, the subscribing witness, and was registered on the same day.

C. M. Wade and wife, Kizziah Wade, and Henry H. Wade conveyed the land on 1 September, 1905, to the defendant G. D. B. Parker, by deed, which was registered on 6 March, 1906, and on 24 January, 1910, Harriet M. Wade and Bertha (Wade) Smith conveyed the land to the defendant by deed registered 17 August, 1910. On 8 December, 1913, Harriet (Wade) Smith and Bertha (Wade) Smith and their husbands, Isaac and Isaiah Smith, conveyed the land to the defendant by deed registered 16 December, 1913. This action was commenced 3 December, 1913. It was admitted that on 3 December, 1913, the plaintiff Sarah E. Lee, formerly Sarah E. Wade, was about 22 years of age, and plaintiff Hattie Howard, formerly Hattie Lee, was about 10 years old, they being the illegitimate children and heirs at law of Mary E. Wade.

Clark M. Wade and Mary E. Wade were in actual possession of the land until Mary's death in 1895, and after her death Clark M. Wade continued in possession of the land until 1 September, 1905, when he conveyed the land to the defendant, who at once entered into possession of the same and has continued in the sole and exclusive possession thereof since that time.

Defendants tendered the following issues:

1. Was the deed from Mary E. Wade to Clark M. Wade and others procured by the fraud and duress of the said Clark M. Wade, as alleged in the complaint?

2. Are the plaintiffs the owners of any part of the lands in controversy, and if so, what part?

3. Is the claim of plaintiffs barred by the statute of limitations?

The court submitted issues which, with the answers thereto, are as follows:

1. Is the paper-writing, a copy of which is attached to the complaint, marked "Exhibit C," and which is recorded in the office of the register of deeds of Duplin County, in Book No. 91 at page 443, the act and deed of Mary E. Wade? Answer: "No."

2. If so, was the execution of the said deed procured by the fraud, force, undue influence and duress of Clark M. Wade, as alleged in the complaint? Answer: ......

3. Are the plaintiffs Sarah E. Lee and Hattie Howard the owners of the land described in the complaint, or of any interest therein; and if so, what interest? Answer: "Yes; three-eighths interest."

4. What is the reasonable annual rental value of said land? Answer: "$15."

The court then charged the jury upon the first issue as follows: "You will answer this issue upon the facts as you find them to be from the evidence which has been introduced, and according to the instructions which the court will give you. The plaintiffs contend that you should answer this issue 'No'; the defendant contends that you should answer this issue 'Yes.' I instruct you that the paper-writing purporting to be a deed from Mary Wade to Clark M. Wade and others, having been admitted to record and offered in evidence in this case, the law presumes that the said paper-writing was properly executed by Mary E. Wade, the grantor named therein. Therefore, the burden of proof is upon the plaintiffs to satisfy the jury, not only by the greater weight of the evidence, but by evidence which is clear, strong, cogent, and convincing, that the paper-writing was not executed by Mary Wade as her act and deed; and unless you shall be so satisfied by such evidence, you should answer the issue 'Yes.' "

After fully stating the contentions of the parties with respect to this issue, the court, at the request of the plaintiff, instructed the jury as follows: "When you come to consider the evidence relative to the first issue, I instruct you that in order for a person to execute a paper-writing so as to make the paper-writing his or her deed there must be a purpose to execute it and a physical act indicating the purpose. There must be a will and an exercise of the will indicated by some act. Did Mary Wade authorize Burton to make her mark? Did she by her conduct ratify and confirm his act as her act? If you find that she did so with intent and purpose to execute the paper as her deed, then it is her deed, regardless of whether she was acting under duress or not."

The court then instructed the jury in substance that if they found the facts to be as stated by the witnesses, as to the manner of making the mark on the deed and as to what occurred at the bedside of Mary E. Wade at the time, and "if the jury further find from the evidence that she did or said nothing to indicate her intention of executing the paper-writing or of signing her name thereto for the purpose of executing the

same; and if the jury shall further find all the foregoing facts from evidence, strong, clear, cogent, and convincing, then the court charges you that the purported execution of said paper-writing is in law a forgery, and that said paper-writing is void and is not the act and deed of Mary E. Wade, and you will answer the first issue 'No.'

"If you answer the first issue 'No,' that is, if you find that the paper-writing is not the act and deed of Mary E. Wade, then you need not consider the second issue, nor the third issue (which it is agreed the court shall answer)."

It appears inferentially from the record as though the court had, at first, submitted an issue as to defendant's possession and the statute of limitations, and charged the jury in respect thereto, and that all of this was withdrawn, when certain admissions which appear in the judgment were made.

The court entered the following judgment: "It being admitted in open court that Mary E. Wade died about one month after 24 June, 1895, leaving surviving her two infants, one two or three months old and the other two or three years old, her only heirs at law, and that the plaintiffs Sarah E. Lee and Hattie Howard are the children of said Mary E. Wade; and it being further admitted that the plaintiffs, if entitled to recover at all, are entitled to recover a three-eighths undivided interest in the lands described in the complaint: it is now, upon the verdict and upon the admissions in open court, considered, adjudged, and decreed that the plaintiffs Sarah E. Lee and Hattie Howard do recover of the defendant G. D. B. Parker a three-eighths undivided interest in the tract of land described in the complaint, known as the Sand Hill tract, and that the said plaintiffs be let into the possession of said land with the defendant G. D. B. Parker as tenants in common." The judgment also included a recovery of damages and costs. Defendants excepted in apt time to all rulings, and appealed from the judgment.

*H. D. Williams for plaintiff.*
*Gavin & Wallace for defendant.*

WALKER, J., after stating the case: The court submitted the four issues as set forth in the statement of the case, and as now appears, by amendment of the record, a fifth issue was added, as to the statute of limitations. The first and third issues only were answered, under the final instruction of the court, that if they answered the first issue "No" they need not answer the other issues, as possession under color and the statute of limitations would be immaterial.

We had just as well dispose of this point in the beginning and before passing to a discussion of the principal question.

After the date of the alleged deed, Mary E. Wade continued in possession of the land, with her father, and the occupation was the same as it had always been. There was no claim of adverse possession, and nothing done to oust her or to assert title under the deed. The case, therefore, falls within the principle of *Fowle v. Whitley,* 166 N. C., 445, and *Brown v. Brown,* 168 N. C., 4, 13. The Court said in *Fowle v. Whitley, supra:* "There is no act of disseizin shown. From all that appears, both continued to live on the land as prior to the sale, without any change in the attitude of the parties to the possession. There is no evidence of the exclusive possession or any acknowledgment on the part of Rowe."

There Warner had purchased under a tax deed, which he claimed to be color of title, but Rowe continued in joint possession with him. The facts in this case are stronger in favor of these plaintiffs, as here the parties were tenants in common; which requires an ouster to sever the tenancy. It would be straining the law to hold that there was any adverse possession by Clark Wade and the other grantees, during the life of Mary E. Wade, under the circumstances of this case. If there was such a possession either by Clark Wade and his associates or the defendant, who claims under them, after the death of Mary E. Wade, it cannot avail the defendant, as her heirs were infants, and one of them was not of age when the suit was brought and the other only 22 years old, so that the question of adverse possession under color is thus eliminated, even if it would not require such a possession for twenty years to bar the plaintiff's right of entry as tenants in common. In this view of the case it is unnecessary to discuss the question as to color of title.

The only matter we need consider is whether there was any error in regard to the first issue; for if the deed is void, and there is no other source of title, the plaintiffs are entitled to recover their share, as adjudged by the court. The execution of a deed includes signing, sealing, and delivery. It is unquestionably true that signing may be done either by the grantor affixing his own signature or by adopting one written for him, or by making his mark, or impressing some other sign or symbol on the paper by which the signature, though written by another for him, may be identified. He may, therefore, either sign himself or sign by the adoption of his name as written by another, or he may make his mark, even though he may not be able to write himself. Devlin on Deeds, sec. 237; *Devereux v. McMahon,* 108 N. C., 134. And the grantor may have the assistance of another to steady or direct his hand. Devlin, sec. 236 and notes; *Carroll v. McGee,* 25 N. C., 13. But the signature, if written by another, must be made at the request or with the consent of the grantor, and the delivery as well; and

whether there was a signing or a delivery by him is a question of fact, what act is a sufficient signing or delivery being a question of law.

It was said in *Huddleston v. Hardy,* 164 N. C., 210, quoting from *Tarlton v. Griggs,* 131 N. C., 216: "There must be an intention of the grantor to pass the deed from his possession and beyond his control, and he must actually do so, with the intent that it shall be taken by the grantee or some one for him. Both the intent and the act are necessary to the valid delivery. Whether such existed is a fact to be found by the jury." And the same rule applies to the signing of the deed. If another acts for the grantor, he must do so at the request of the grantor, or he must be either expressly or impliedly authorized by him to affix his signature. It is not sufficient that the grantor's name is signed by a third party, unless he has authority in some way conferred to act for him. Devlin on Deeds, sec. 232. The signing and delivery must be acts done by the grantor, either by himself or through the agency of another. Whether Mary E. Wade made her mark on the deed to Clark Wade, or J. L. Burton was requested to make it for her, is manifestly a question of fact for the jury, and it was for them to say whether it was her mark, or theirs alone. We think there were circumstances from which the jury could infer that she did not consent to the execution of the deed, either to the signing or the delivery of it, and they had the right, as the authorities show, to consider all the attendant circumstances.

The court, in its charge, gave the defendant the full benefit of the legal presumption arising from the probate and registration of the deed, and then instructed the jury, in accordance with the principles we have stated, that they must find as a fact whether the transaction in the room was conducted with her consent, or, in other words, whether she exercised her will at all, and signed and delivered the paper-writing with the intent that it should operate as her deed; and if she did so sign and deliver it as her deed, it was binding upon her, without regard to any question of fraud or duress, the simple matter being whether she executed it or not. "The question of the delivery of a deed is generally one of intention of the parties, and it is essential to a valid delivery that there should be some act or declaration from which an intention to deliver may be inferred. A formal delivery, however, is not essential; nor are express words necessary. Nor is a manual delivery of the instrument to the grantee required, it being sufficient if it is apparent either from the words or acts of the grantor that it was his intention to treat the deed as his and to make a delivery of the same." *Fitzgerald v. Goff,* 99 Ind., 28.

The court further instructed the jury that the plaintiffs must establish the negative of the issue by strong, clear, cogent, and convincing evidence. The mere fact that in one part of the charge the jury were told that if they found certain facts to have existed at the time of the

transaction the deed would in law be a forgery was not prejudicial to defendant, if erroneous, as they were also instructed how to answer the issue in the event that they made such a finding. The charge must be construed as a whole.

The complaint and answer sufficiently raised the issues submitted to the jury, and the evidence was unobjectionable. We do not see why it was not relevant, as the witnesses deposed merely to the occurrences in the room, and it was competent to show them by oral testimony.

As there was evidence to sustain the verdict, the motion to nonsuit and the prayers for instructions were properly denied. It was not necessary to inquire whether the deed was procured by fraud or duress, and whether defendant was a *bona fide* purchaser for value and without notice, when the jury had found that it was not the deed of Mary E. Wade, because it had never been executed by her, as it was a nullity. *Henry v. Carson,* 96 Ind., 412. It is there said, at p. 422: "A deed delivered without the knowledge, consent, or acquiescence of the grantor is no more effectual to pass title to the grantee than if it were a total forgery, although the instrument may be spread upon the record, and innocent purchasers are not protected. *John v. Hatfield,* 84 Ind., 75; Pom. Eq. Jur., 735, 779, 807, 821; Bigelow Fraud, 156; *Austin v. Dean,* 40 Mich., 386; *Ramsey v. Riley,* 13 Ohio, 157; *Van Amringe v. Morton,* 4 Whart., 382. These cases show that even if the appellants purchased in good faith for a valuable consideration and without notice, such facts will not avail against the appellee; his equities are at least equal to those of the appellants, and in equal equities the legal title prevails." See, also, *Tisher v. Beckwith,* 30 Wisc., 55, where it is said: "It is essential to the validity of a deed that it should be delivered, and such delivery to be valid must be voluntary, that is, made with the assent and in pursuance of an intention on the part of the grantor to deliver it, and if not so delivered it conveys no title." It was held in *Black v. Shreve,* 13 N. J. Eq., 455, 457: "Until an instrument under seal is delivered by those who sealed it, or with their consent, it has no legal operation as a deed; delivery is essential for that purpose. It must go into the hands of the grantees or covenantees by the consent of the grantors or covenantors; possession acquired by force or finding, or in any other mode than by the full consent of the party to be bound, is ineffectual." The case of *Abee v. Bargas,* 65 S. W. Rep., 489, is in some essential respects like this one, and there the deed was held to be void.

While we hold that the paper-writing claimed to be the deed of Mary E. Wade is a nullity, and cannot, therefore, operate as a deed for want of signing and delivery, which are component elements of such an instrument and essential to its valid execution, it is proper and just to say that the defendant G. D. B. Parker appears not to have had any knowl-

edge of the circumstances and surroundings under which the said paper-writing was obtained; but, as we have shown, this fact cannot avail him as a defense.

There was no error at the trial of the case.

No error.

ALLEN, J., did not sit in this case.