478 P.2d 335

**Benjamin AMADOR, Plaintiff,**

**v.**

**DEPARTMENT OF EMPLOYMENT SE-
CURITY of the State of Utah,
Defendant.**

No. 12059.

Supreme Court of Utah.

Dec. 8, 1970.

Henriod, J., dissented and filed opinion with which Callister, J., concurred.

Richard L. Young, Salt Lake City, for plaintiff.

Vernon B. Romney, Atty. Gen., Fred F. Dremann, Asst. Atty. Gen., Salt Lake City, for defendant.

TUCKETT, Justice:

This is an appeal from a decision of the Department of Employment Security. By a decision dated March 18, 1970, the Board of Review of the Industrial Commission of Utah affirmed the decision of the appeals referee denying plaintiff's claim for unemployment compensation benefits for certain weeks and ordering the plaintiff to repay money received for those weeks in the total sum of $1,326.

The facts are not in dispute. The plaintiff is a man of limited education who quit his job with the United States Smelting, Refining and Mining Company on February 6, 1969. After the three-week waiting period he filed claims for the weeks ending March 8, 15, 22, April 5, and May 10, 1969, which claims he personally signed. For the weeks we are concerned with plaintiff's wife signed the weekly claims for benefits. It is benefits received by the plaintiff for those weeks that the Depart-

ment contends it is entitled to recover. It is undisputed that the claim forms were signed by the wife with the plaintiff's knowledge and consent.

The action of the Department was based upon the provisions of Section 35–4–6(d), U.C.A.1953, which provides as follows:

> Any person who, by reason of his fraud, has received any sum as benefits under this act to which he was not entitled shall be liable to repay such sum to the commission for the fund. If any person, by reason of his own fault, has received any sum as benefits under this act to which under a redetermination or decision pursuant to this section, he has been found not entitled, he shall be liable to repay such sum, and/or shall, in the discretion of the commission, be liable to have such sum deducted from any future benefits payable to him. In any case in which under this subsection a claimant is liable to repay to the commission any sum for the fund, such sum shall be collectible in the same manner as provided for contributions due under this act.

Pursuant to the provisions of Section 35–4–4(e), the Industrial Commission of Utah adopted Regulation 4–301 which provides in part as follows:

> \*    \*    \*    \*    \*    \*
>
> 4. To maintain continuing eligibility for benefits with respect to any week of unemployment during any continuous period of unemployment, an individual shall continue to register and report as provided in subsections 1, 2 and 3 above, once each week at a time designated by the Department or at intervals of more or less than one week when so directed by the Department. No continued claim for benefits shall be allowed until the claimant shall furnish to the Department a signed continued claim for benefits on the form prescribed.

The claim form adopted by the Department contained this language in bold print: "THIS CLAIM MUST BE PERSONALLY SIGNED BY THE CLAIMANT." The Department does not claim that the plaintiff was guilty of fraud, nor does it claim that the plaintiff was not entitled to the benefits he received for the weeks the claim forms were signed by the wife. The plaintiff's name having been affixed to the claim form by the plaintiff's wife, with his knowledge and consent, was sufficient to attest its validity. It has long been the rule that the signing of a legal document may be done either by the maker thereof affixing his own signature or by adopting one written for him, or by making his mark, or impressing some other sign or symbol on the paper by which the signature, although written by another for him, may be identified.[1] Thus one might en-

---

1. Lee v. Parker, 171 N.C. 144, 88 S.E. 217; In re Estate of Deskovic, Deceased, 21 Ill.App.2d 209, 157 N.E.2d 769, 72 A.L.R.2d 1261; Reed v. City of Cedar

cumber or convey away his lands, sell his personal property, and do many other things without personally signing his name. In this matter the plaintiff was bound by the claims signed by his wife and he would be estopped from claiming a second time. The Department might well have rejected the claims which were signed by the plaintiff's wife.

It would appear the Department grounded its decision on that part of the statute above referred to which provides:

> * * * If any person, by reason of his own fault, has received any sum as benefits under this act * * * shall be liable to repay such sum.

The record discloses no fault on the part of the plaintiff, except that he permitted his wife to sign the weekly claim forms. We are of the opinion that the Department placed an unreasonable interpretation on its own regulation, and that the action of the Department was contrary to the legislative intent that the act be liberally construed to provide a cushion against the shocks and rigors of unemployment.

The decision of the Department is reversed. No costs awarded.

CROCKETT, C. J., and ELLETT, J., concur.

---

Rapids, 138 Iowa 366, 116 N.W. 140; Plemens v. Didde-Glaser, 244 Md. 556, 224 A.2d 464.

1. "*I* claim benefits * * * and certify that *my* statements on this claim are true

HENRIOD, Justice (dissenting)

Appeal from a Department decision denying Amador's claim for unemployment compensation and ordering restitution of amounts paid under written claims signed by claimant's wife, quite obviously in violation of regulations adopted pursuant to Title 35–4–4(a), Utah Code Annotated 1953, wherein, for continuing eligibility, a *claimant* must register weekly and "furnish * * * a *signed* continued claim for benefits on the form prescribed." [1]

Claimant quit his job. After a three-week disqualification period, he *personally* signed and filed claims for March 8, 15 and 22, 1969. His wife signed his name to such a claim for March 29; claimant signed a claim for April 5, his wife signed claims for April 12, 19, 26, and May 3, claimant for May 10, and thereafter his wife signed the weekly claims beginning May 17 and continuing for 18 weeks through October 4.

Appellant says 1) the decision represents a misinterpretation of Title 35–4–6(d), Utah Code Annotated 1953, which provides that if one by fraud or by reason of *his own fault* receives payments to which he is not entitled, he must repay them, and 2) that the decision denied claimant due process of law.

---

and correct. I know the law provides penalties for false statements. *This claim must be personally signed by the claimant.*

As to point 2): It has absolutely no merit. On the contrary, the Department may have been the one denied due process of law. Claimant, by letting someone else file without advising the Department, failed to follow the simplest kind of instructions printed and emphasized by large print in plain English on the very claim he was required to file, to-wit: "This claim must be *personally* signed *by the claimant.*" Counsel's effort to explain away this interdiction seems to be somewhat superficial and unconvincing, when he says there was no explanation printed on the form to show what would happen to claimant if he failed to follow this simple, understandable and mandatory instruction. The main opinion's assertion that "The plaintiff's name having been affixed to the claim form by the plaintiff's wife, with his knowledge and consent, was sufficient to attest its validity" is even more superficial, since it attests to nothing. If it does, it attests to a suspicion of irregularity and most certainly it attests to a violation of both the most reasonable and emphasized regulations.

Furthermore, it is novel even to suggest, as does the main opinion, as a justification for evasion of the statute and regulations, that "It has long been the rule that the signing of a legal document may be done either by the maker thereof affixing his own signature or adopting one written for him,"—because the statute and the regula-

tion here specifically and clearly say this rule is inapplicable by the requirement that the *claimant* and *he alone,* can sign the claim,—so loud and clear as to have been printed in large unmistakable, readable and warning type. The reasoning indulged in the main opinion as the very basis for this decision seems to me to be so unwarranted as not to provoke serious consideration, and to say that "The record discloses no fault on the part of the plaintiff, except that he permitted his wife to sign the weekly claim forms" is like weakly saying the robber was not at fault because he let his wife hold the gun on the victim.

As to point 1): The gist of counsel's argument, and that of the main opinion, is that albeit a third party signs the claim, the Department must pay anyway,—which argument, of course would render rather nugatory the statutorily mandatory *absolute* requirement that the claimant,—not someone else,—must sign each claim. To agree with such argument simply opens the door for fraud, easy immunization from a perjury charge, and gives birth to a chaotic, impossible administrative problem where obviously there are tens of thousands of claims to be processed annually in this state.

It is obvious that, under the simple instructions furnished the applicant here, by showing slides, giving him a handbook with printed, emphasized instructions on the claim forms themselves, the appellant

unwarrantedly has failed to establish his claim, since his personal signature is a condition precedent thereto. The weakness of his contention is emphasized by the rather unsubstantial statement of counsel that "the Department has seized upon a technicality of its own devising to deny appellant benefits to which he was clearly entitled."[2] For the Department "technically" to have waived the statute and the regulations which it must enforce, may have subjected it and its agents to a charge of unlawful hypothecation of taxpayers' funds.

The main opinion certainly would not conclude that if plaintiff, being an able-bodied man, were required by the statute or regulations to present his claim in person, such statute or regulations could be flouted by the appearance of his wife or his son or his grandfather or somebody else in person.

The appellant simply did not comply with the most facile kind of condition precedent,—personally signing the application. He signed it a number of times without difficulty and apparently had less difficulty in reading the cashable checks. His wife seemed to share the same type of indisposition to conform with the law, whichever way you look at this aromatic venture in hide and seek. One hardly is impressed by an ex-post-getting-detected parol claim of agency in his wife with not a whit of written authority, but certainly a motive to avoid perjury.

The reason for the regulations seems obviously to prevent such fast and loose prestidigitation with taxpayers' money, by such unorthodox jingoese. This court hardly can afford to become particeps in a growing and apparently unmoral sanction to a give-away program based on a dedicated flight from simple integrity.

This case renders administrative effectiveness and reasonable regulatory procedures impotent, and a plain, clear and certain statute meaningless. Moreover, it provides an effective means for separated spouses to file claims in their ertswhile mate's name, receive an ill-gotten gain by holding a weapon over the latter's head falsely to testify that he permitted the use of his name, while the former laughs over a stein of suds in the closest saloon at the unemployment agency's inability to carry out the intentions of the law. But that is permissible in our modern society, I suppose, because, after all, ain't this just old taxpayers' funds for which so many have so little respect?

CALLISTER, J., concurs in the dissenting opinion of HENRIOD, J.

2. This is an assumption. Whether plaintiff was available for work has not been determined, as counsel stated in oral argument.