**In re LEA LUMBER & PLYWOOD
LLC, Debtor.**

**No. 00–04574–8–JRL.**

United States Bankruptcy Court,
E.D. North Carolina,
Wilson Division.

March 6, 2001.

Joseph N. Callaway, Rocky Mount, NC, trustee.

### ORDER

J. RICH LEONARD, Bankruptcy Judge.

This chapter 7 case is before the court on the trustee's motion for the sale of property free and clear of liens, and on a motion for relief from the automatic stay filed by Hudson United Bank, N.A. ("Hudson").[1]  A hearing was held on January 11, 2001 in Wilson, North Carolina.

### Facts

The debtor is a Delaware limited liability company ("LLC") that operated a hardwood veneer plant in Bertie County, North Carolina until June of 2000.  The Bertie County plant was the debtor's principal place of business.  At all times relevant to

---

1.  The third matter on the calendar, the trustee's application for employment of an equip- ment sales broker, has been resolved by separate order.

this proceeding, the debtor's designated manager was BAU, Ltd. ("BAU"), a North Carolina corporation. The president and sole owner of BAU is Bradly Upfield ("Upfield"), who was also the debtor's plant superintendent. All membership interests in the debtor were owned by two other LLC's. Neither BAU or Upfield owned any membership interest in the debtor.

On December 29, 1998, the debtor made three promissory notes with an aggregate principal amount of $5,000,000 payable to Lyon Credit Corporation ("Lyon"). The debtor intended to use the proceeds of the notes to refinance its Bertie County operation. The three notes were secured by the debtor's pledge of substantially all of its assets, including real property and tangible and intangible personal property. The liens granted to Lyon were created by a Deed of Trust and Security Agreement executed on December 29, 1998. The trustee concedes that this instrument was properly recorded with the Bertie County Register of Deeds and that the deed of trust is a valid lien on the debtor's real property. For purposes of the present motions, all parties agree that this instrument was properly executed by the debtor in the following form:

> LEA LUMBER & PLYWOOD, LLC
> a Delaware limited liability company (SEAL)
> By: BAU, Ltd., a North Carolina corporation, Its Manager (SEAL)
> > By: S/Bradly Upfield
> > Name: Bradly Upfield
> > Title: President.

In an attempt to perfect Lyon's security interest in the debtor's personal property, two UCC–1 Financing Statements were also executed on December 29, 1998. Duplicate originals of both financing statements were timely filed in the offices of the North Carolina Secretary of State and the Bertie County Register of Deeds. The

Bertie County Register of Deeds assigned filing numbers 99–013 and 99–015 to the two financing statements.

UCC # 99–013 gives notice of Lyon's security interest in "[a]ll plant, equipment, apparatus, machinery, fittings, ... owned by the debtor and now or at any time hereafter affixed or attached to, incorporated in, placed upon, or in any way used in connection with the ... real property ...." (Exhibit 5 to Brief in Support of Trustee's Motion, at 2.) Although Hudson gamely contested this point, the court agrees with the trustee that UCC # 99–013 is a fixture filing and does not give notice of a security interest in the debtor's general personal property. This financing statement is signed for the debtor as follows:

> LEA LUMBER & PLYWOOD, LLC
> By: BAU, LTD
> (By) S/Bradly Upfield.

The parties agree that this signature effectively binds the debtor and suffices to perfect Lyon's security interest in the covered collateral. Accordingly, the validity of Hudson's security interest in the debtor's fixtures is not presently at issue.

UCC # 99–015 covers a sundry assortment of collateral broadly described as "real or personal, tangible or intangible, ..., including all cash, cash equivalents, Accounts, bank and deposit accounts and deposits, investment property, commodity contracts, timber, timber rights, Inventory, Equipment, Goods, Chattel Paper ..." and so forth. (Exhibit 6 to Brief in Support of Trustee's Motion, at 3.) Based on its review of this description, the court finds as a fact that this financing statement is intended to perfect Lyon's security interest in the debtor's general personal property and intangibles. UCC # 99–015 is signed for the debtor as follows:

Lea Lumber & Plywood, LLC

(By) *S/Bradly Upfield.*

Nowhere on the face of UCC # 99–015 is there any reference to BAU, Ltd.

Pursuant to an assignment recorded in the Bertie County Registry, Hudson is the present holder of Lyon's interest in this set of instruments. An involuntary petition under chapter 7 of the Bankruptcy Code was filed against the debtor on August 10, 2000. The involuntary filing was followed by an order for relief and the appointment of a trustee on September 19, 2000. The outstanding balance due to Hudson under the loan documents was approximately $3,508,842 as of September 30, 2000.

On December 8, 2000, Hudson filed a motion for relief from the automatic stay, seeking leave to foreclose upon its real property collateral and take possession and dispose of all personal property collateral. The trustee then filed a motion for sale of property free and clear of liens, seeking permission to sell the debtor's real and personal property, with liens attaching to the proceeds in order of their priority. The trustee has separately filed an adversary proceeding against Hudson seeking, inter alia, to void Hudson's lien against the collateral described in UCC # 99–015 under § 544(a) of the Bankruptcy Code.

## Discussion

■ As an initial matter, Hudson's motion for relief from the automatic stay is allowed as to its interest in the debtor's real property and fixtures. This relief is appropriate under § 362(d) because Hudson's interest in this property is not adequately protected, and because the trustee concedes the validity of Hudson's liens on these forms of collateral. This shifts the focus of the pending motions to the validity of Hudson's lien on the debtor's remaining personal property. Although this issue is

also raised in the pending adversary proceeding, the underlying question of law is fairly presented here, and both Hudson and the trustee have given de facto consent to the court's decision of this issue in conjunction with these cross-motions.

■ The trustee's challenge to Hudson's security interest in this property is founded on N.C. Gen.Stat. § 25–9–402(1), which provides that "[a] financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral." The trustee argues that UCC # 99–015 is not "signed by the debtor," and therefore does not satisfy these requirements. The trustee points out that, although the debtor's name is typed in the signature block, there is no reference to the debtor's manager BAU, Ltd. Thus, Bradly Upfield, who is not a member or manager of the debtor, appears to have signed for the debtor in his individual capacity. On this basis, the trustee contends that the financing statement is not signed by the debtor.

Hudson, on the other hand, has drawn the court's attention to N.C. Gen.Stat. § 25–9–402(8), which reads: "[a] financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading." The North Carolina Comment to § 9–402 states that this section "adopts a 'notice filing' system" under which "the security agreement proper need not be registered; a financing statement containing such general information as is deemed sufficient to put a party searching the record on notice that there is a security agreement outstanding

against a particular person covering certain types of collateral is all that need be filed."

Although Hudson concedes that the debtor's signature on UCC # 99–015 is imperfect, it argues that this defect is a "minor error" for purposes of § 9–402(8). Furthermore, because the signature error is not seriously misleading to parties searching the public record, Hudson contends that the financing statement is effective despite this minor error. In support of this argument, Hudson points out that UCC # 99–015 is properly indexed under the debtor's name, appropriately identifies both debtor and creditor, and sufficiently identifies the affected collateral.

The court agrees with Hudson that UCC # 99–015 gives clear notice of the bank's security interest to researchers and therefore is not seriously misleading. This, however, begs the prior question of whether the defective signature is a minor error. If the error is not minor, the requirements of § 9–402(1) are not satisfied, and the financing statement is simply void. In this event, the substantially misleading analysis is immaterial and cannot salvage the ineffective financing statement. Thus, the effectiveness of this financing statement turns on the sufficiency of the debtor's signature.

The starting point for an exploration of this issue is N.C. Gen.Stat. § 25–1–201(39), which defines the term "signed" to include "any symbol executed or adopted by a party with present intention to authenticate a writing." The Amended Official Comment to this section plainly states that a permissive reading of this term is intended:

> The inclusion of authentication in the definition of 'signed' is to make clear that as the term is used in this Code a complete signature is not necessary. Authentication may be printed, stamped or written; it may be by initials or by thumbprint. It may be on any part of the document and in appropriate cases may be found in a billhead or letterhead. No catalog of possible authentications can be complete and the court must use common sense and commercial experience in passing upon these matters. The question always is whether the symbol was executed or adopted by the party with present intention to authenticate the writing.[2]

Although the North Carolina courts have acknowledged the policies expressed in the Amended Official Comment, they have generally taken a protective approach towards the signature requirement and have been particularly strict when considering the effectiveness of the debtor's signature. The debtor's signature is of special significance because it authenticates the debtor's consent to the creditor's security interest.

The clearest statement of this approach is found in *Provident Finance Co. v. Beneficial Finance Co.*, 36 N.C.App. 401, 245 S.E.2d 510 (1978). In *Provident Finance*, a husband and wife executed a promissory note and security agreement in favor of

---

**2.** The North Carolina Comment to § 25–1–201(39) cites the reader to *Lee v. Parker*, 171 N.C. 144, 88 S.E. 217 (1916). *Lee* was decided well before the adoption of the Uniform Commercial Code, and indicates that North Carolina has long held the rule that a signature includes any mark or sign adopted by the signer. "It is unquestionably true that signing may be done either by the grantor affixing his own signature or by adopting one written for him, or by making his mark, or impressing some other sign or symbol on the paper by which the signature, though written by another for him, may be identified. He may, therefore, either sign himself or sign by the adoption of his name as written by another, or he may make his mark, even though he may not be able to write himself." 171 N.C. 144, 150, 88 S.E. 217.

the plaintiff creditor. The financing statement was signed by the debtor wife, but was not signed by the debtor husband. The note was eventually paid in full, although no termination statement was filed. The defendant creditor subsequently made a loan to the debtors, who executed a security agreement pledging some of the same property that had collateralized the plaintiff's earlier loan. The defendant prepared and filed a financing statement that was signed by both debtors. After this, the plaintiff made a series of new loans to the debtors, again secured by the same property. Although new notes and security agreements were executed in conjunction with these loans, the plaintiff elected to rely upon the financing statement that had been filed more than two years previously to secure the original loan.

The debtors filed a petition in bankruptcy some months later, and the resulting priority dispute between the two creditors turned on the effectiveness of the debtors' signature on the plaintiff's financing statement. Discussing N.C. Gen.Stat. § 25–1–201(39), the court wrote:

> We realize that the U.C.C. does have a liberal definition for "signed." Because of the importance placed upon financing statements, we believe that, in cases dealing with the debtor's signature on financing statements, the courts should apply this liberal definition with caution. Some other courts have applied these provisions somewhat liberally when dealing with a creditor's signature. However, absence of the debtor's signature is a different matter.

36 N.C.App. 401, 245 S.E.2d 510, 515 (1978). (Citation omitted.) Based on this reasoning, the court held that the plaintiff's financing statement was void.

It is significant that the male debtor's signature was completely absent in *Provident Finance.* This omission was not cured by the wife's signature because there was no suggestion that she had signed the financing statement as an agent for her husband. Stating that the financing statement serves "only ... a notice function," the court opined that "any agency status should be obvious on the face of the financing statement." *Id.* In dicta, the court of appeals then approved the "suggestion of agency" apparent in the creditor's signature: "Provident Finance Co. By/s/ Brenda Sutton." *Id.* Although Brenda Sutton's agency status was not expressly stated, it was suggested with sufficient force to authenticate the creditor's signature.

*Provident Finance* was decided two years after *Little v. County of Orange,* 31 N.C.App. 495, 229 S.E.2d 823 (1976). Like *Provident Finance, Little* required the court of appeals to determine the sufficiency of the debtor's signature on the financing statement. Here, the name of the corporate owner of the collateral was typed in the space for the debtor's signature; however, the financing statement was not actually signed by an officer of the corporation. The court held that the typed name was an insufficient signature under North Carolina corporations law, and that the financing statement was accordingly not "signed by the debtor" for purposes of the Uniform Commercial Code.

The opposite fact pattern was presented in *Mitchell v. Rock Hill Nat'l Bank (In re Mid–Atlantic Piping Prods. of Charlotte, Inc.),* 24 B.R. 314 (Bankr.W.D.N.C.1982). In *Mitchell,* the debtor corporation's name and address were completely omitted from its signature on the security agreement, which was signed by the corporation's president with no express reference to his official or representative capacity. The debtor's name was used on the promissory note and financing statement, and extrinsic

evidence "overwhelmingly" indicated that the president had signed the security agreement with intent to bind the debtor corporation. There was no evidence that the president's signature "was intended as anything other than a signature of the Debtor by its duly authorized officer, even though this was not made explicit by any reference to the Debtor's name on, above, under or near the signature line ...." 24 B.R. 314, 319.

*Mitchell* is distinguishable from the present case on several grounds. Most obviously, the North Carolina bankruptcy court was applying South Carolina law, which clearly permitted the use of extrinsic evidence to determine the debtor's intent. In addition, *Mitchell* involved a challenge to the debtor's signature on the security agreement, not the financing statement. The importance of this latter distinction, however, must be discounted for two reasons. First, because the security agreement creates the security interest, the need for clear authentication of the debtor's signature is even stronger than on the financing statement. Second, the sufficiency of the signature on both documents is determined with reference to the definition found in § 1–201(39), making determinations in either context analogous.

The most recent decision in this area is *Advanced Analytics Laboratories, Inc. v. Environmental Aspecs, Inc. of North Carolina (In re Environmental Aspecs, Inc.),* 235 B.R. 378 (E.D.N.C.1999). *Environmental Aspecs* arises out of an intricate fact pattern that involves creditors competing for the assets of parent and subsidiary corporations who are both in bankruptcy. The various holdings in the decision are best understood in the context of those facts.

In June of 1994, SouthTrust extended a line of credit to the parent corporation, EAI. EAI executed a note and a security agreement in connection with that loan, and SouthTrust filed financing statements listing EAI as the debtor. Although EAI was the only named debtor in this transaction, SouthTrust knew of the existence of EAI's subsidiary corporation, EAI of NC, and relied on EAI of NC's assets when approving later extensions of credit. SouthTrust did not require EAI of NC to execute a security agreement and did not file financing statements to perfect a security interest in property owned by EAI of NC.

In September of 1996, EAI of NC executed a note and security agreement in favor of a second creditor, AAL. In December of 1996, AAL filed financing statements mistakenly identifying the *parent* corporation EAI as the debtor. However, the debtor's signature line on the financing statements contained the words, "See Exhibit A Attached for description and debtor's signature." Exhibit A to the financing statements was the security agreement that had been properly signed by EAI of NC as the debtor.

Both EAI and EAI of NC subsequently filed chapter 11, placing the creditors' competing claims to EAI of NC's assets before the bankruptcy court, which granted summary judgment for AAL. The district court affirmed this conclusion on appeal.

With regard to AAL, the court noted that a copy of the security agreement can suffice as a financing statement if it contains the requisite information and is signed by the debtor. Because the attached security agreement named and was properly signed by the correct debtor, the court found that the misidentification of the debtor in the financing statements was a minor error that did not render the financing statements ineffective. Finding "no question" that AAL's filed financing statement and security agreement gave

adequate notice of AAL's lien against EAI of NC's assets, the court concluded that this minor error was not seriously misleading.

The court next considered the effectiveness of the financing statements that had been filed by SouthTrust in 1994. Citing *Provident Finance*, the court concluded that SouthTrust's financing statements "were simply inadequate to establish a lien against the assets of EAI of NC" because they were not signed by EAI of NC. 235 B.R. 378, 388. In the absence of the debtor's signature, the financing statements lacked "the personal authentication which formalizes assent to the legal consequences" of the document. *Id.* at 389. In the court's view, " 'the requirement by the Legislature of the debtor's signature does not further any 'notice' objective. Its necessity is, rather, grounded in the purpose of evidencing assent and preventing fraud. *Regardless of whether there was any understanding between the parties regarding this financing statement, it was not formalized by a signature of the party to be held.*' " *Id.* (emphasis in original), *quoting Matter of Maple Contractors, Inc.*, 172 N.J.Super. 348, 357, 411 A.2d 1186 (1979).

■ Taken together, these four decisions establish the bright-line rule that a financing statement is void if the debtor's signature is completely absent. Rarely, however, is the signature line left completely blank. Instead, as has happened here, the debtor will have made some attempt to satisfy § 9–402(1)'s requirement that the financing statement be signed by the debtor. Thus, the real significance of these decisions is the guidance they provide on when the debtor's imperfect effort falls so far short of the mark that the signature is effectively absent.

Viewed in this light, *Little* establishes that the typed name of the debtor, standing alone, does not constitute the debtor's signature. *Provident Finance* and *Environmental Aspecs* hold that the signature of a person or entity related to the debtor, standing alone, does not satisfy the requirement that the financing statement be signed by the debtor. However, *Provident Finance* also indicates that the signature of a corporate debtor need not be perfect, so long as there is a "suggestion of agency" in the signature. This point is made again in *Mitchell*, where the signature of the debtor/corporation's president was found sufficient, despite the omission of the debtor's name and address.

Applying these rules to the present facts, the court concludes that UCC # 99–015 has been "signed by the debtor" for purposes of N.C. Gen.Stat. § 25–9–401(1). The signature challenged here has two positive differences from the signatures examined above. First, the name of the corporate debtor is correctly stated on the signature line of the financing statement. This distinguishes the present signature from the financing statements challenged in *Provident Finance* and *Environmental Aspecs*. Second, the correctly typed name of the debtor does not stand alone, but rather is accompanied by the written signature of an officer of the debtor's manager. This "suggestion of agency" makes the present signature distinguishable from the signatures found in *Little*, *Provident Finance*, and *Environmental Aspecs*.

It is true that the challenged signature contains two significant flaws: 1) the name of the debtor's manager, BAU, Ltd., is omitted, and 2) Bradly Upfield's signature gives no indication that it is affixed in his capacity as an officer of BAU. After careful consideration, however, the court concludes that these errors are not fatal to the effectiveness of Hudson's financing statement.

Under dicta in *Provident Finance*, the financing statement's failure to note Upfield's status as an officer of *BAU's* is immaterial. Although the signature would be cleaner if Upfield's signature was accompanied by the word "President" or some other clear expression of agency, this omission does not detract from the suggestion of agency that arises when an individual signs for a corporate debtor. The court declines to void the financing statement on this hyper technical ground.

The more serious error is the omission of the name of the debtor's agent BAU. As it stands, the signature on UCC # 99–015 incorrectly suggests an agency relationship between Upfield and the debtor corporation. The significance of this error is, however, mitigated by several factors. First, Upfield is not a complete stranger to the debtor; but is, in fact, the very individual whose name should be affixed to the financing statement—albeit not in his individual capacity. Second, the financing statement is associated with a host of properly signed documents, including the security agreements themselves. Third, the function of the financing statement is not compromised by this error. The financing statement places full and accurate notice of Hudson's security interest on the public record, thereby serving its intended purpose under the Uniform Commercial Code.

Finally, the court takes judicial notice that the debtor's signature on the financing statement will not be required under Revised Article 9. *See* Revised § 9–509(b). Under Revised § 9–509(b), a debtor who signs a security agreement automatically authorizes the creditor to file a financing statement as to the covered collateral. There is no requirement that the financing statement itself be signed by the debtor. Revised Article 9 will not be effective in North Carolina until July 1, 2001 and

clearly does not apply to the present financing statement. Nevertheless, the pending revision provides insight into the purpose and function of signatures in secured transactions.

By signing the security agreement, the debtor assents to the creation of a security interest in favor of the creditor. The financing statement has no impact on the agreement between these two parties, and the creditor's failure to file a financing statement does not void the security interest as to the debtor. Instead, the financing statement structures the relationship between the filing creditor and his competitors within the universe of creditors. Given the relative functions of these two documents, it is difficult to imagine a situation in which a debtor would sign a security agreement, but refuse to sign a financing statement. It is even more difficult to image a creditor that would extend credit under that circumstance.

This commercial reality tips the scales against using technical mistakes to undercut the secured creditor's position. Under current law, the complete absence of the debtor's signature renders a financing statement void. The present facts, however, do not present that situation. Here, the debtor's signature is present, although imperfect. For the reasons stated above, the court concludes this imperfection does not render the signature a nullity, leading to the conclusion that the financing statement is effective as against the bankruptcy trustee.

## Conclusion

Based on the foregoing, the trustee's motion for the sale of property free and clear of liens is denied. The motion for relief from the automatic stay filed by

Hudson United Bank, N.A. is granted in its entirety.

**So Ordered.**