27 F.3d 564
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
George W. UMHOLTZ, Plaintiff-Appellant,
v.
David L. BRADY, Defendant-Appellee.
 No. 93-2141.
 United States Court of Appeals, Fourth Circuit.
 Argued: April 11, 1994.
Decided: June 17, 1994.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. W. Earl Britt, District Judge. (CA-92-43-5-BR, BK-91-00343-5-AP)
 E.D. Gaskins, Jr., Everett, Gaskins, Hancock & Stevens, Raleigh, North Carolina, for Appellant.
 George Robinson Ragsdale, LeBoeuf, Lamb, Leiby & MacRae, Raleigh, North Carolina, for Appellee.
 Jeffrey B. Parsons, Everett, Gaskins, Hancock & Stevens, Raleigh, North Carolina, for Appellant.
 M. Toler Workman, LeBoeuf, Lamb, Leiby & MacRae, Raleigh, North Carolina, for Appellee.
 E.D.N.C.
 AFFIRMED.
 Before WILKINSON and HAMILTON, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 
 OPINION
 PER CURIAM
 
 1
 This case presents the question of whether the dominant shareholder of a close corporation violated his fiduciary duty owed to another shareholder by failing to expressly inform the other shareholder that he was taking loans from the corporation. We now affirm the district court's decision that the defendant shareholder did not violate any duties owed to the plaintiff.
 
 I.
 
 2
 In 1978, David Brady and George Umholtz, along with four of Brady's relatives, formed Lincoln Developers of Raleigh, Inc. ("Lincoln"). At the time of formation, Brady and Umholtz held equal 17% stakes in the corporation, although Brady acted as the dominant principal at all times. Over the next twelve years, the Lincoln shareholders established several other corporations, referred to collectively as the Lincoln Group. In 1987, the Group's cash flow began to fall short of its obligations, prompting Brady to request cash infusions from the Group's other shareholders. Brady requested contributions from Umholtz in 1987 and 1988, both personally and through the corporation's comptroller.
 
 
 3
 At the same time the Lincoln Group was suffering, another of Brady's business ventures was also doing poorly. As a result, Brady did not join the other shareholders in infusing capital into Lincoln. In fact, while Umholtz loaned $470,000 to Lincoln over the two-year period in question, Brady withdrew a total of $290,000 from the company. Although Brady's withdrawals were taken as loans from the corporation and were formally recorded as such in Lincoln's books and records, Umholtz did not review those documents. Umholtz eventually learned of the loans when he sought an accounting of each shareholder's capital account in late 1988.
 
 
 4
 On October 31, 1990, Brady filed for Chapter 11 bankruptcy, which was later converted to a Chapter 7 liquidation. Umholtz subsequently filed a proof of claim against the bankruptcy estate for $470,000 based on his loans to Lincoln, which is now also insolvent. Umholtz claimed that the $470,000 he was owed could not be discharged because the debt arose as a result of either false pretenses or Brady's "fraud or defalcation while acting in a fiduciary capacity." See 11 U.S.C. Secs. 523(a)(2)(A) & 523(a)(4). In August 1992, the bankruptcy court held that Brady did not violate his fiduciary duty to Umholtz by taking loans from the corporation and concluded that Umholtz had no basis for objecting to the dischargeability of Brady's indebtedness. The district court affirmed the bankruptcy's court's decision, and Umholtz now appeals.
 
 II.
 
 5
 Umholtz contends that the district court erred in upholding the dischargeability of Brady's debt because Brady violated his fiduciary duty to Umholtz by taking loans from Lincoln while soliciting funds from other shareholders. Umholtz relies on general principles of fiduciary duty, as well as specific North Carolina statutes, see, e.g., N.C.Gen.Stat. Sec. 55-35, in arguing that Brady was required to expressly inform Umholtz of the loans. Umholtz's essential claim is that Brady had a duty to disclose to fellow shareholders his dealings with Lincoln.
 
 
 6
 The flaw in Umholtz's argument is that Brady did fully disclose his transactions with Lincoln. The loans to Brady were recorded on Lincoln's books, and, as the bankruptcy court concluded, "Umholtz could have learned the true facts if he had examined the financial information available to him." All of Lincoln's shareholders were permitted to take withdrawals from Lincoln's funds for personal use, and Umholtz easily could have discovered Brady's loans through a simple inspection of the corporation's records. Umholtz's attempt to create a duty on the part of a close corporation's dominant shareholder to personally inform all other shareholders of any transaction with the corporation is without legal support.
 
 
 7
 Both the bankruptcy court and the district court held that Brady's actions did not constitute a violation of North Carolina law, and therefore that Umholtz could not block the dischargeability of Brady's indebtedness. The opinions are thorough and carefully reasoned. Accordingly, for the reasons expressed in those opinions, the judgment of the district court is
 
 
 8
 AFFIRMED.